Documentary footage of bruise on tree May I proceed, your honor? May it please the court, my name is Aaron Nielsen, I am here on behalf of BP, appreciate your time. This appeal is at the intersection of two of this court's most important settlement decisions. That is the matching decision, which this court has seen, matching 495 and the second decided about a year ago by this court. In the matching decision, this court stressed the importance of making sure that revenues and expenses are recorded in the same month, otherwise the calculation is inevitably going to be wrong. In Texas Gulf Seafood, this court then said, if a claimant claims things about its expenses, that is entitled to no deference. That would be inconsistent with the structure of the settlement to afford any deference at all to the decision of the claimant, the claimant's characterization. Here however, the settlement program acted without the benefit of Texas Gulf Seafood, and in our opinion, deferred to the characterization offered by the claimant. Let's assume Texas Gulf Seafood applies fully to this, I guess it's the timing of the end. Yes, correct, your honor. So then the issue becomes, was it this deferral that happened in Texas Gulf Seafood, I mean to me deferring is, the way I understand Texas Gulf Seafood, oh, their accounting records show it's in, you know, we get the spreadsheet, it's in column C, you know, it's under this category, and just saying, okay, that's the way they classified it, that's the way we're going to treat it. That's what I view deferral as. To me, that's not what happened here, I mean for one thing, the claims administrate, at first, they classify it contrary to what the claimant said, they moved it, at the very first stage, they said, no, this isn't right, we're going to move it into the other month. To me, that's not just blindly accepting how the company treated it, because they're doing the exact opposite at the get-go. Then the claimant comes in and says, well, no, whoa, we had it right, we had it right, and they submit documentation, you know, including invoices, also things about the franchise agreement that show what they had to do for this soft opening, or whatever it was called, and then they look at those documents and say, okay, you've persuaded us, you had it right. But, I mean, how is that just saying we're accepting how you, what column you put it in? Well, sure, Your Honor. I think it's important to recognize what deference is. Deference, is it binary, or is it a spectrum? So, you know, I teach administrative law for a living, and I will tell you that there's often deference, but nonetheless, it could still be unreasonable. So here, when you look at the situation, they turned over their data, and the settlement, you know, accountants looked at this and said, you have all of your expenses in April, all of your revenue is in May, this is just an error, like that cannot possibly be correct, and sent it over there. At which point, then our friends said, well, here's our explanation, and we had this two-day grand opening, and so on, and so on, and so on, at which point, the settlement program says, oh, we're going to reverse course, and we're going to then move it all back to April. And you say, okay, well, does that make sense? And as I look at what the settlement program said, you can look at their calculation notes, I think there's at least a reasonable probability, which is the standard when you have an intervening change of law, that this was based on deference, and I say, what did it say? You look at page 4606 of the record, what they said was, here's the explanation, they paraphrased the explanation, and then they say, as such, no further inquiry was deemed necessary. But they weren't deferring, as in Texas Gulf Seafood, to just the way they put it on their books, they got these documents, and maybe, I mean, at some point, yes, any time you agree with someone, you're in some sense, as you say, there's a spectrum, deferring to them, I mean, they deferred to them after they produced this evidence, but it wasn't what I see Texas Gulf Seafood as just deferring to how it was entered on the books. I mean, otherwise, they wouldn't have needed all these invoices and franchise agreements. Well, correct, Your Honor, correct. So I would call the Court's attention to the most recent of the Texas Gulf Seafood line of cases. This is the case on the site of August 9th. That claimant's name is still under seal, so I'll refer to it as the Sports Arena Texas Gulf Seafood case. And look what was the deference at issue there that this Court found as deference. And that was, you had an explanation from the claimant, which was then copied by the settlement program. And then you look up at the appeal panel decision, which was, you know, compared to some of the others, relatively wholesome, saying, no, we looked at this, and this Court nonetheless said if you're copying a label, that is deference. And it's apparent that the appeal panel also deferred. That was the language of this Court. It was apparent. I read this Court's most recent decision as saying, we're going to look at deference in a common sense sort of fashion, especially realizing, of course, that people are making these decisions not knowing about Texas Gulf Seafood. So the standard, I think, I submit, is reasonable probability. So short of agreeing with you and your position, actually going with BP's view of the accounting, what would be an appropriate way for the claims administrator to fine for the other side but not, quote, defer to them? Well, sure. Sure. What would have been enough, I guess. Yes. So, I mean, it seems to me that the big problem here is you look at May 2009, and it is an outlier by any measure. So you'd say, what evidence do they have that makes May 2009 not look like an outlier? And the explanation from our friends was, oh, we received a bunch of free and discounted merchandise. Okay. Perhaps that is so. There should be some evidence of that. And we're not talking about a little bit. Look at, compare May 2009 to June 2009. We're talking about $40,000. If you're getting, you know, $20,000 or $30,000 or $40,000 worth of free merchandise, there will be some correspondence or some invoice or something. But here, the settlement program's accountants, they looked at this, they received an explanation, and they said, as such, no further inquiry was deemed necessary. And I read that as deference. At a minimum, it's ambiguous. And that should be enough to say, just send it back. We have, there are still accountants in place. We can get all this figured out. The court doesn't need to get into the weeds of accountants, I don't think the weeds are all that deep here, to figure out whether or not this was appropriate. Because again, I read the language of the settlement program. They said, as such, no further inquiry is deemed necessary. Well, that further inquiry is exactly what I think Texas Gulf Seafood says is required. And again, you know, it's not just what the settlement program said. It's what the settlement program did. I would ask the court to look at the documentation provided in the claimant's reconsideration and to say, can you add up anywhere close to $30,000, much less $60,000, in their description of what they found? There's a grand open celebration that they say, you know, a $10,000, and it later says maybe up to $20,000, but that also includes advertising. Well, advertising is not a COGS, a cost of goods spent at all. So that, just put that to the side. And then they say, well, we have all these folks came in to help train our people. Well, that also is not a COGS at all. That is a, it's a mismatch. So you say, well, what evidence in their own documents do they have that's anywhere close to explain the discrepancies if you look at the chart? And it's just, it's just not there. And then the last point, so there's the language of the settlement program. There's the, what the settlement program did. And then, of course, there is the time when all of this happened. This court has already found in four separate cases that some folks within the settlement program were deferring. That's just the Texas Gulf Seafood line of cases. As Judge Haynes knows, there also was the David West line of cases where folks were there. We were constantly raising the argument, you can't just take their attestation at its word. And this court finally, it finally got up on appeal. And this court agreed the BP had been right all along on that important point. So I say, you put all of that together and at, you know, if you don't, if the court doesn't want to just render judgment, you would say send it back to the accountants. There are accountants still in place. They're still processing claims. Send it back to the accountants or to Judge Barbier? You send it back to Judge Barbier. But I suspect, I can't speak to Judge Barbier. So what you want to do is send it back to Judge Barbier and say apply Texas Gulf Seafood? Correct. Correct. And I suspect, though obviously Judge Barbier can speak for himself, I suspect the answer to that point would be we'll send it back to the accountants. And we'll just get to the bottom of this. And the issue will either be resolved one way or the other. But at least we'll have this sort of a process in place that we think is appropriate. So that's really the basis of our argument. They also raised their cross appeal, which I am happy to discuss. I think there's at least four reasons why that cross appeal shouldn't even get much of this court's attention. One is the standard of review. Standard of review says that this is a fact error, that it is not for review. Whereas, Texas Gulf Seafood, this court has said is core to the settlement. That's a legal error. Fact issues are not. And they say on page four and page five of their opening brief, this is a black and white error of fact. This is a pure error of fact. Well, I think that should be enough of it by itself. The second is they don't respond to the actual settlement program's analysis. You look at page 4606 of the record. Settlement program gives two reasons. They respond to one. Well, there's two reasons you respond to one. The other is still there. That should also be the end of the game. The third point would be if we want to get into policy 473, they say, this is an addition, not an amendment. Wait a minute, you had your submission. You turned in the file with your claim. Now you are amending your submission. Your submission is broader than it was before. We constantly call that an amendment, not an addition. But in any event, you would look at the purpose of the policy, which is exactly this. We don't want people coming in after their claim has been denied, adding new material to their claims. It's entirely consistent with the purpose. And then, of course, finally, if the court looks at the text of Exhibit 6, what they were supposed to be providing, none of this is here. I urge the court to look at 4457 and 4464 of the record. This is what their reference is to this tax sale. That is all we have in the record about a pretty substantial event. We have no idea when the taxing authority somehow got this stuff. It doesn't even apply to everything that they're saying. They say, they suggest that the entire $600,000 plus was sold at a tax sale. You actually look at what the documents say. The documents are referring to only a subpart of that, which they sell for like $25,000. And it's not a contemporary. It's going to look back at their balance sheets. So we submit that that is a non-starter. But as to our issue, we think there's a pure error of law error. And the court really, in light of an intervening decision, just ought to send it back. I've been talking a fair bit. If the panel doesn't have any questions, I'm happy to reserve the balance of my time. Thank you, Counselor. Thank you. May it please the Court, Charles King on behalf of the Cross Appellant. I think a good place to begin would probably be with this idea that the, I'm sorry, this reconsideration narrative, the deference that he says was given to the Cross Appellant's categorization of these expenses. I think if you look at the calculation notes that are surrounded on 4606 with these pre-opening costs, you can see that the process was very deliberative on behalf of the reviewers. There were other pre-opening costs that the Cross Appellant submitted were, should have been booked in April instead of May. There was payroll for employees who were being trained in April. There was a payroll period that ended on May 3rd that the reviewer said, well, we're going to have to, I went back and I put some of this in, I put three days of this in May and eleven days of this in April because I want to make sure that the ABITDA numbers are correct. This was all very deliberatively examined by the reviewers and as Judge Costa pointed out the, there was no deference initially. These were moved at first because of course they expected that these COGS would have been, should have been booked in May after the restaurant opened because that's typically how it works. And then after it was explained to them that these expenses were booked in April when they were purchased and used in April for three weeks of training. They had to train cooks, they had to train servers, that they then looked at everything and agreed that this was a reasonable place for them to have booked it. I think it's important to remember that these were booked in 2009, long before the oil spill, long before the ABITDA requirement for a failed business economic loss claim was sorted out. There's no dispute that these were. It wasn't like the Tampa Bay Buccaneers case I was on where they shifted the months after they learned what the settlement required. Right. These were contemporaneously booked. There wasn't any error in booking them when they booked them, when they paid for them. And what BP is essentially asking for is some sort of a, as my opposing counsel mentioned, this being at the intersection of the matching decision. They're looking for some kind of a smoothing or a matching of these expenses in the appropriate month, but in failed business economic loss claims, there's nowhere in the settlement agreement where that is any kind of a mandate for a reviewer to do. They're there to simply correct errors in the booking of these costs, and this is when these were booked. It's also important to remember that this was all going on, the reconsideration, in 2017, eight years after this all happened. The claim was filed in 2013. It was lost in FWA review for several years, and the denial notice came out in March of 2017. So this was already eight years after these expenses had even been booked, and now, you know, our opposing counsel would like, they argue that there should be more invoices, more something to explain these deductions, but they're simply eight years, now ten years after the fact, there's not. There was a long back and forth during the reconsideration process with answers to several inquiries. Such a, I mean, you could look in the ROA 3973, 3988, 4556. These were all responses to inquiries about their financials, their updated financials, and they gave everything that they had to explain how the costs were. It was eventually accepted by the settlement program. This is not a case where they just looked at the label of a cost and said, yeah, okay, that's what it says here, so that's what we'll do. This isn't a case where they felt like they had no discretion but to keep the costs where they were based on some language in the settlement agreement. This is a case where they were given a significant amount, general ledgers, everything else, and came to their own decision about whether this was correct. And I think the fact that there were other costs that they decided not to move back into April that the cross-appellant is saying, was arguing that they should have, shows that they were deliberative and did not simply just defer to wherever they said costs should go. Now, as far as the cross-appeal itself, admittedly it is probably, it was inartfully stated to say that it was a black and white issue of fact on the, in the opening brief. However, I think that issue of fact is a pure result of an error of law and a misapplication of the settlement agreement. When you look at, ironically, it is also a result of the fact that they did, the settlement program did not defer to their initial classification of these costs because the problem here was when the claim was first submitted, the financial statements only went through October 2012, even though according to Exhibit 6 of the settlement agreement, they should have gone through December 2012. Now, the claim was denied before that could ever even be examined because it did not get over this EBITDA hump because the settlement reviewers did not defer to the classification of these expense, these COGS expenses. So, the error was never realized by the claimant until they filed for reconsideration four years after they filed their claim. And after discussions with their attorney and the claims appeal, their realization that they needed to include these financial statements through 2012. And, you know, he says it is an amended submission. We, I believe it is additional financial statements. I think one important thing about the two months that were added, November and December 2012, is the fact that in November 2012, that is the date that this tax sale occurred. The receipt is at, I'm sorry, 4464, the letter by this third party, Mr. Saad, who purchased all these items at the tax sale, is at 4457. But, so the financial data went through October 2012. This tax sale occurred in November 2012. This also was a business that had essentially been defunct since February 2011. A lot of this was done trying to get their books, their ducks in a row, trying to file their claim. They did not have their data all the way up to the date that it was filed. And then four years after the fact, they realized that they needed to correctly reflect what their financial situation was at the date that they filed the claim. And the simple fact is that since it came after denial notice for a completely different reason because of the EBITDA issue, the accounting notes show that the balance sheets were rejected due to policy 473. These assets remaining to be liquidated were still on the books in October 2012. And the new financial statements showing them off the books were not part of the contemporaneously maintained records simply because there was no evidence really until that sale occurred that those assets were no longer theirs. But in any event, that failure to look at these additional financial statements because of policy 473 violated the black letter of Exhibit 6 of the settlement agreement where it states that the claimant shall submit balance sheets and profit and loss statements from May 2010 until present, meaning the day that they file their claim. And the failure to recognize that I think is a mistake of law that did lead to a black and white mistake of fact, but I think that it is something that according to the standard review, this court needs to be reversed. And I see that I have a fair amount of time, but that's all I have unless there are any questions. Thank you. Thank you. Well, I am pleased to report that the end is in sight on these settlement appeals. We do appreciate the court's indulgence. We realize that this has been a lot of work for everybody. The end is in sight. When? Soon. The answer is soon. But I will say this, there were starting at 400,000 claims and we are down to less than 50. So by my math, we are, what is it, 10,000? We've done 999 out of 10,000 on the way there. So we appreciate that. But that does lead back to this one. This claim was an error. There was, it seems to me, at least a reasonable probability of deference. More than that, I think it was just outright deference and a mistake. An error was made here. A few points. My friend on the other side stresses. Your position is we should write a two-line opinion that says remanded to district court for consideration under Texas goal? Exactly right. That is all we are asking for here. They suggest that this was contemporaneous. The facts are a little bit more complicated than that. I point the court to page 3934 of the record. This is where they restate their books to go from cash basis to accrual accounting. I'm happy to explain the distinction between the two. Cash basis means when you record, you put it in your books. We have it. Okay, you've got that. I would also urge the court, a couple of quick points, is as far as I can tell, they have never disputed that they had to have food to open their restaurant. So we have said, surely some of these cogs had to have been in May because otherwise you would have no food for your restaurant. And I've gone back and read their brief. They got discounts and whatnot for the openings. Well, sure. But the point is that they had to have food, right? Like where did this food come from? We've said if they didn't, the sky, we said that if they didn't get it from here, where did they get it from? And I have not seen the response to that. So there's some error here. We know that there's some error, which I think further supports the idea that the settlement program here deferred, or at least made a reasonable probability that they deferred. I would again point the court to look at page 30 of our brief. They have never challenged that chart of numbers. It just makes no sense. You look at June, the very next month, there's less revenue and $40,000 difference in cogs. That cannot possibly be. That doesn't make any sense at all. I would urge the court again to look at the most recent Texas Gulf Seafood. It's more than just labels and not just copying labels. I think the court is pretty strong to say that if you're just copying verbatim explanations, that also counts as deference. And here I don't see any difference between copying verbatim and paraphrasing. Either way, it strikes me as exactly the same. As to the cross appeal, one quick point that I think is worthwhile on policy 473, if the court looks at the text of 473, it says generally, the word generally is built in there because it's a discretionary standard that's just reflecting the accounting discretion that they all have, all the accountants have. So here, the CSSP looked at their argument saying why you should let us in after they missed the deadline. They didn't provide what they're supposed to provide. Now they say, oh, let us get this extra couple of months. 473 allows the settlement program to do that. It's up to the discretion of the settlement program if you have a good explanation. And here you will look in vain in the record for any real explanation for how any of this happened. When did the taxing authority take things? What did it take? We don't know. We have a story of a statutory lien by a landlord, which a lien is not a change of ownership. Then we say at some point, for reasons we don't know or when or how, the taxing authority takes it. They sold some of it. We don't know what exactly they sold. The settlement program looked at this and they did not exercise their discretion to allow them to file late documents after their claim had already been denied. I don't see how that's anything but pure accounting discretion. And in any event, how Judge Barbier was obligated to get into the weeds of that. If the court has no further questions, we do appreciate your time. Thank you so much. Thank you. This will conclude the arguments of this.